**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                **-v-**                                                  **15-CR-143-V**

**JOSE RUBEN GIL,**

                **Defendant.**
_____

## REPORT, RECOMMENDATION, AND ORDER

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions. Dkt. No. 55.

Defendant Jose Ruben Gil is charged in the Second Superseding Indictment with engaging in a continuing criminal enterprise in concert with five or more other persons with respect to whom the defendant occupied a position of organizer, supervisor, and manager in violation of 21 U.S.C. §§ 841(b)(1)(B), 848(a), and 848(b); conspiring to possess with intent to distribute heroin, fentanyl, and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and conspiring to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(ii), 1956(a)(1)(A)(i), and 1956(h). Dkt. No. 217.

On May 12, 2017, Mr. Gil filed an omnibus motion seeking, among other things, to dismiss Count I of the Second Superseding indictment charging him with engaging in a continuing criminal enterprise ("CCE Count"), and to suppress statements. Dkt. No. 194.  At an appearance on November 1, 2017, I denied defendant's omnibus discovery demands as moot and ordered additional briefing on defendant's motion to dismiss.  Minute Entry for 11/1/2017; Dkt. No. 288.  After additional briefing, I took the motions under advisement.  For the following reasons, I RECOMMEND that the defendant's motion to dismiss and motion to suppress be DENIED.

## MOTION TO DISMISS THE CCE COUNT

Defendant argues that Count I of the Second Superseding Indictment should be dismissed because it does not identify the three "violations necessary to constitute the continuing series element," and it "fails to specifically set forth the facts and circumstances, including date, location, participants, [and] nature of the purported controlled substance."  Dkt. No. 194, pp. 16.  For its part, the government contends that a CCE indictment "need not enumerate the specific offenses it intends to use to establish the continuing series element if the indictment tracks the statutory language."  Dkt. No. 309, p. 6.

According to 21 U.S.C. § 848, a person engages in a "continuing criminal enterprise" when he or she violates certain felony drug statutes as "part of a continuing series of violations" while acting "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and from which such person obtains substantial income or

2

resources." 21 U.S.C. § 848(c). The Second Circuit Court of Appeals had interpreted "a continuing series" to mean at least three felony drug violations committed over a defined period of time. *United States v. Flaharty*, 295 F.3d 182, 197 (2d Cir. 2002) (citing *United States v. Aiello,* 864 F.2d 257, 264 (2d Cir. 1988)).

"[I]n order to find a defendant guilty of engaging in a continuing criminal enterprise, the jury may not simply agree that the defendant committed three underlying crimes but must unanimously agree . . . which of the (three or more) individual violations constituted the continuing series." *Id.* (citing *Richardson v. United States,* 526 U.S. 813, 824 (1999)). While a jury must be unanimous as to each of the predicate drug violations forming the CCE, "an indictment that does not identify which of the many alleged felonies constituted the series is not thereby defective." *Flaherty*, 295 F.3d at 197 (citing *Santana-Madera v. United States,* 260 F.3d 133 (2d Cir. 2001), *cert. denied,* 534 U.S. 1083 (2002)); *United States v. Pike,* 2006 WL 146061, at *2 (W.D.N.Y. Jan. 19, 2006) (Arcara, J.) (holding that a CCE indictment is sufficient if it "alleges that the continuing series of felonies were violations of § 841(a)(1) and § 846"); *United States v. Mullen*, 450 F. Supp. 2d 212, 215-17 (W.D.N.Y. 2006) (citing cases holding that a CCE indictment is not constitutionally defective merely because it fails to identify the specific predicate offenses); *Jones v. United States,* 306 F. Supp. 2d 142, 149 (D. Conn. 2003) (holding that a CCE indictment could not be dismissed on a *Richardson* challenge where the indictment gave defendant sufficient notice "by identifying alleged felonies which could constitute the series . . . .").

3

In each of the cases cited above, the court has held that a CCE count nearly identical to Count I of the Second Superseding Indictment in this case properly states a CCE offense. In *Flaharty,* the CCE count alleged only that defendants engaged in a CCE "in that they committed violations of Title 21, United States Code, Section 841(a)(1) and 846, which violations were part of a continuing series of violations of those statutes . . . ." *Flaharty,* 295 F.3d at 197. Similarly, in *Pike,* the CCE count alleged that defendant "engaged in a series of violations of § 841(a) and § 846." *Pike,* 2006 WL 146061, at *2. The challenged CCE count in *Mullen* alleged that the defendant "engage[d] in a Continuing Criminal Enterprise in that he did violate Title 21 . . . Section[s] 841(a)(1), 843(b), and 846 which violations were part of a continuing series of violations of said statutes." In *Jones,* the CCE count simply charged petitioner with "engag[ing] in a CCE in that he did violate Title 21, Section 846, 841(a)(1) and 860 and Title 18 . . . , Section 2, as alleged in Counts One through Thirty-Nine . . . ." *Jones,* 306 F. Supp. 2d at 149.

In this case, the Count I of the Second Superseding Indictment alleges that:

> From in or about June 2013, and continuing to at least in or about September 2015, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, **JOSE RUBEN GIL a/k/a Unc a/k/a Ruben Gil Campos a/k/a Mayor of Mexico**, did knowingly, willfully, intentionally and unlawfully engage in a Continuing Criminal Enterprise in that he did violate Title 21, United States Code, Sections 841(a)(1), 846, and 856(a)(1), which violations were part of a continuing series of violations of said statutes undertaken by the defendant, **JOSE RUBEN GIL a/k/a Unc a/k/a Ruben Gil Campos a/k/a Mayor of Mexico**, in concert with five or more other persons, known and unknown, with respect to whom the defendant, **JOSE RUBEN GIL a/k/a Unc a/k/a Ruben Gil Campos a/k/a Mayor of Mexico**, occupied a position of organizer, supervisor and manager, and from which continuing series of violations the defendant, **JOSE RUBEN GIL a/k/a Unc a/k/a Ruben Gil Campos a/k/a Mayor of Mexico**, obtained substantial income and resources.

4

> The defendant, **JOSE RUBEN GIL a/k/a Unc a/k/a Ruben Gil Campos a/k/a Mayor of Mexico**, was the principal administrator, organizer and leader of the Continuing Criminal Enterprise and was one of several such principal administrators, organizers, and leaders, and the violations of Title 21, United States Code, Sections 841(a)(1), 856(a)(1), and 846 that the defendant, **JOSE RUBEN GIL a/k/a Unc a/k/a Ruben Gil Campos a/k/a Mayor of Mexico**, committed as part of a continuing series of violations involved at least 150 kilogram of cocaine, a Schedule II controlled substance, and at least 30 kilograms of heroin, a Schedule I controlled substance, that is, amounts at least 300 times the quantity of cocaine and heroin described in Title 21, United States Code, Section 841(b)(1)(B).
>
> **All in violation of Title 21, United States Code, Sections 848(a) and 848(b).**

Dkt. No. 217, pp. 7-8. Based on the cited case law, I find that these allegations are more than sufficient to state a violation of the CCE statute, 21 U.S.C. § 848.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure states that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is considered factually sufficient if it contains the elements of the offense charged, fairly informs a defendant of the charges against which he must defend, and enables a defendant to plead double jeopardy in the future. *Hamling v. United States,* 418 U.S. 87, 117 (1974); *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.), *cert. denied,* 504 U.S. 926 (1992). The Second Circuit Court of Appeals has "consistently upheld indictments that do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Ulbricht*, 31 F. Supp. 3d 540, 549 (S.D.N.Y. 2014) (quoting *United States v. Walsh,* 194 F.3d 37, 44 (2d Cir. 1999)); *see also United States v. Cohen,* 518 F.2d 727, 733 (2d Cir. 1975).

5

In this case, the CCE Count closely tracks the language of the CCE statute, 21 U.S.C. § 848, charging the defendant with violating certain felony drug statutes as "part of a continuing series of violations" while acting "in concert with five or more other persons" with respect to whom the defendant "occupied a position of organizer, supervisor, or manager," and from which he "obtained substantial income or resources." 21 U.S.C. § 848(c).  The CCE Count sets forth the approximate time frame (June 2013 continuing until September 2015) during which the defendant is alleged to have presided over this CCE.  Dkt. No. 217, pp. 7-8.  Moreover, the Introduction to the Superseding Indictment, which is incorporated by reference into the CCE Count, alleges that various members of the Gil/Aguirre drug trafficking organization, including defendant: transported and delivered thousands of kilograms of illegal narcotics, including heroin, fentanyl, and cocaine from Mexico throughout the United States, including Lockport, Niagara Falls, and Buffalo, New York; sold those illegal drugs in those cities; established fictitious "front" companies to conceal their drug trafficking activities; and deposited and withdrew millions of dollars derived from drug sales.  Dkt. No. 217, pp. 2-7.

I find that these allegations are specific enough to pass constitutional muster in that they apprise the defendant of the elements of his alleged offenses and the factual charges against which he must defend himself, and allow him to invoke double jeopardy if he is prosecuted in the future.  Based on the foregoing, I find that the CCE Count against the defendant sufficiently states a CCE offense and sets forth enough detail to satisfy the Sixth Amendment to the United States Constitution.

**MOTION TO SUPPRESS**

Defendant also moves to suppress statements that he made on January 14, 2014, after he was taken into custody in California by the Montebello Police Department. Dkt. No. 194, pp. 14-15; Dkt. No. 194-1, pp. 17-21; Dkt. No. 240-1, p. 1.  He contends that the statements were coerced and taken in violation of his right to counsel.  Dkt. No. 194, pp. 14-15.  Of significance to defendant's motion, on April 16, 2014, approximately three months after his arrest, defendant – while represented by counsel – pled guilty in California Superior Court to possession for sale of a controlled substance (cocaine) in violation of California Health & Safety Code § 11351.  Dkt. No. 240, p. 16; Dkt. No. 258, p. 2. Based on his California conviction, the defendant thereafter pled guilty in the United States District Court for the Southern District of New York to having violated the terms of his supervised release.  Dkt. No. 258, p.3.  At an appearance before the federal court on July 23, 2014, the defendant admitted that "on or about January 14, 2014, in Los Angeles County, California, [he] committed a state crime – the sale, transportation, [and] offer to sell, a controlled substance – in that [he] and two others knowingly and unlawfully transported imported, sold, furnished, administered, and gave away, and offered to transport, imported into and out of the State of California, a controlled substance, to wit, cocaine."  Dkt. No. 240-2, p. 5.  Defendant was represented by counsel during this proceeding as well.  Dkt. No. 240-2, pp. 1-2.

At no time during the prosecution of his state crime or supervised release violation did defendant allege that his detention was unlawful, that his statements were coerced, or that he was denied his right to counsel.  The government argues, and I agree, that given the circumstances of defendant's prior guilty pleas, he is collaterally

7

estopped from challenging the legality of his detention and the admissibility of his statements in this case. "[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized . . . ." *Haring v. Prosise,* 462 U.S. 306, 321 (1983).

The Second Circuit Court of Appeals has explained that "a guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). In this regard,

> a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

*Gregg*, 463 F.3d at 164 (quoting *Menna v. New York,* 423 U.S. 61, 62 n.2 (1975)). Put another way, the question of whether a guilty plea forecloses a defendant from asserting a pre-plea constitutional violation in a later proceeding must be decided not on the basis of waiver, but on the principles of collateral estoppel and the full faith and credit statute. *Gregg*, 463 F.3d at 164; *Haring*, 462 U.S. at 310.

I find that those principles are met in defendant's case and that his prior pleas – in California State Court to possessing cocaine with the intent sell, and in the U.S.D.C. for the S.D.N.Y. to transporting cocaine in and/or out of the State of California –

8

necessarily decided the issue of whether he committed the acts that were the subject of his custodial statements. As an initial matter, defendant had compelling reasons to challenge his detention and the admissibility of his statements because he faced substantial jail time for his alleged crimes in California.[1] Cal. Health & Safety Code § 11351. This is especially true because any crime defendant admitted to in state court necessarily established a violation of his supervised release conditions in federal court. Despite these consequences, the defendant made an informed decision not to challenge his arrest or interrogation. Rather, with the benefit and advice of his retained counsel and after being advised of his rights, the defendant entered voluntary pleas of guilt – not once but twice – to distributing drugs. These pleas, accepted by the courts, constituted a final judgment on the issue of whether defendant was in fact guilty of the drug distribution crimes to which he pled. Dkt. No. 240-1, pp. 2-3. They also rendered "any antecedent constitutional violation bearing on factual guilt," such as defendant's pre-

---

[1] In this regard, defendant's case is distinguishable from *Gregg*, in which the defendant was detained by the police after he was discovered using his mother's discounted Metrocard to enter the subway. After detaining Gregg, the police searched him and found a gun in his waistband. Gregg pled guilty in state court to a lesser charge (impersonation) that did not implicate the gun evidence underlying his subsequent charge in federal court. Because defendant did not plead guilty to a gun crime in state court, his plea did not necessarily decide the issue of his guilt as to possession of the weapon, and he was not therefore estopped from challenging the search that yielded the gun. The *Gregg* Court made it clear that if he had challenged the search resulting in the evidence underlying his impersonation charge, he would be collaterally estopped from doing so by his prior state court plea.

> Were Gregg challenging law enforcement's conduct leading up to his surrender of his mother's Metrocard, i.e., the discovery of the evidence supporting the criminal impersonation charge to which he pled guilty, then under the *Tollett* line of cases Gregg's Fourth Amendment claims would be foreclosed. This is because the plea conclusively establishes his factual guilt on the impersonation charge; how the supporting evidence was recovered is irrelevant. *See Menna,* 423 U.S. at 62 n.2, 96 S.Ct. 241. That is not the case here. In the instant case, Gregg challenges law enforcement's seizure of the firearm *after* the recovery of the misused Metrocard. Therefore, the validity of Gregg's criminal impersonation conviction could not be affected by the alleged Fourth Amendment violations he asserted on the federal felon-in-possession charge.

*Gregg*, 463 F.3d at 166.

9

plea detention and interrogation, "a non-issue." *Gregg*, 463F.3d at 164. Therefore, I RECOMMEND that defendant's motion to suppress his custodial statements be DENIED.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that defendant's motion to dismiss the indictment and to suppress statements (Dkt. No. 194) be DENIED.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation, and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation, and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with Federal Rule of Criminal Procedure 59(b)(2) and Local Rule of Criminal Procedure 59(c)(2).

The parties are reminded that, pursuant to Rule 59 of the Local Rules of Criminal Procedure for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority." **Failure to comply with the provisions of Local Rule 59 may result in the District Judge's refusal to consider the objection.**

The District Judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the Magistrate Judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988). Local Rule 59(c)(3) mandates that "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

**SO ORDERED.**

DATED:    Buffalo, New York
          January 3, 2018

        *s/ H. Kenneth Schroeder, Jr.*
        **H. KENNETH SCHROEDER, JR.**
        **United States Magistrate Judge**