IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

      v.                                        15-CR-143-V

JOSE RUBEN GIL,
HERMAN E. AGUIRRE,
TROY R. GILLON,
DEMETRIUS YARBOROUGH, and
RASHAWN CRULE,

                Defendants.

---

## GOVERNMENT'S WITNESS LIST

**THE UNITED STATES OF AMERICA**, by its attorney, James P. Kennedy, Jr.,

United States Attorneys for the Western District of New York, Meghan A. Tokash and

Michael P. Felicetta, Assistant United States Attorneys, of counsel, hereby files its Witness

List, which also outlines the testimony the government expects to elicit from each witness.[1]

An expert witness disclosure was filed separately.

    1.      **Protected Witness #1** – This witness contacted the FBI in November of 2013

with information about the drug activity of Troy GILLON, Trent Hamilton, and Michael

Mitchell.  This witness will testify about her/his personal knowledge of the drug trafficking

organization, the structure of that organization, and the activity of the organization.

---

[1]  Not all listed witnesses are expected to testify at trial.  However, their names may be
mentioned by other witnesses based on their outlined involvement in the investigation.
Further, counsel may enter into certain stipulations that would obviate the need for live
testimony.  The United States reserves our right to call witnesses not listed and will advise
promptly of our intent to do so.

Specifically, this witness will testify that she/he knows that defendant Troy GILLON began selling cocaine after GILLON's release from federal prison. GILLON would travel to major cities to get the best price for illegal narcotics and GILLON's source of supply was in California. This witness will testify that GILLON was buying cocaine in the Los Angeles area for $27,000.00 per kilogram and would then sell that kilogram in the Buffalo area for $42,000.00. In early 2014, GILLON told this witness that GILLON began purchasing kilograms of heroin. He/she will also discuss a blue Dodge Caravan with a "trap" for hiding drugs during transport that GILLON told him about. The witness will testify that GILLON ran the drug operation and oversaw the distribution of heroin in the Buffalo, NY area and that GILLON used Trent Hamilton as his main distribution in Rochester and Lockport, NY, while Mike Mitchell was GILLON's main distributor in Niagara Falls, NY.

2. **Protected Witness #2** – This witness will testify about their personal knowledge of the relationship between co-defendants Troy GILLON and Demetrious YARBOROUGH. The witness will testify that defendant Troy GILLON was the drug source of supply for defendant Demetrious YARBOROUGH since 2012 when the two met in prison. This witness had firsthand knowledge of conversations between GILLON and YARBOROUGH, and heard them talk about their source of supply from Mexico. YARBOROUGH was moving more cocaine and heroin for GILLON than any other distributor. Specifically, YARBOROUGH was receiving 20 to 30 kilograms of cocaine from GILLON each time, with shipments arriving twice a week or every other week via mail or by vehicle. GILLON would meet with YARBOROUGH and the two would switch vehicles in order to exchange the illegal narcotics and drug proceeds. The witness will testify that he/she has witnessed YARBOROUGH on two separate occasions with large sums of money stored

in shoe boxes--$180,000 on one occasion and $500,000 on another occasion. This witness will also testify that GILLON told him/her that a large shipment of cocaine would arrive in Buffalo the week of May 19, 2014.

3.     **Protected Witness #3** – This witness will testify that Troy GILLON was her/his drug source of supply and charged $1,125.00 per ounce of cocaine. The witness also knew GILLON's phone number (716-605-3341) and provided it to law enforcement, which helped identify GILLON's number on intercepted wire communications. In January, 2014, this witness told investigators that three weeks prior, he observed GILLON in possession of three kilograms of cocaine. He further explained that he saw approximately 15 kilograms of cocaine and 3 kilograms of heroin at a Niagara Falls Boulevard stash house for GILLON. The packaging was marked with a dolphin stamp. This witness will testify that GILLON acquired heroin for $70,000.00 per kilogram and made $20,000.00 in profit from each kilogram sold. This witness will testify that in early 2014, GILLON offered her/him $750.00 to pick up a van with California license plates and deliver it to GILLON's house; GILLON told the witness that the van contained five kilograms of heroin. GILLON told this witness that he met his source of supply while in prison and that his source of supply was from Mexico but living in California. This witness will testify that GILLON supplied co-defendants Trent Hamilton and Michael Mitchell with drugs for retail distribution in the Lockport and Niagara Falls, New York area. He will also give testimony about a second phone number utilized by GILLON (716-940-3807).

4. **Protected Witness #4** – This witness picked up a van containing 5 kilograms of drugs for defendant Troy GILLON in December of 2013. The witness will be asked questions relative to his/her involvement with GILLON in the drug trafficking organization.

5. **Protected Witness #5** – This witness will testify that Trent HAMILTON and Michael MITCHELL were major distributors of cocaine in the Lockport, New York area. This witness personally purchases a "six deuce" or 62 grams of cocaine from Trent HAMILTON on at least three occasions and that HAMILTON charged $2,750.00 for each "six deuce."

6. **Protected Witness #6** – This witness will testify that Trent HAMILTON was a multi-kilogram distributor of cocaine but had the ability to get heroin, molly, illegal prescription pills and marijuana. The witness will testify that HAMILTON told him that he had a "brick" of cocaine intercepted in the mail. The witness will testify that HAMILTON liked to gamble and that she/he witnessed HAMILTON lose $20,000.00 in one night. This witness also has personal knowledge of another cocaine supplier, Mike MITCHELL who resided at 1154 LaSalle Avenue in Niagara Falls, New York. MITCHELL quoted $22,000.00 as the price for ½ kilogram of cocaine. MITCHELL further quoted $2,800.00 for a "62" (two ounces of cocaine) and HAMILTON quoted $42,000.00 for one kilogram of cocaine.

7. **Protected Witness #7** – This witness will testify that she/he knows defendant Demetrius YARBOROUGH a/k/a Tu-Tu. In summer of 2013, the witness was introduced to YARBOROUGH, who was identified as a kilogram-level cocaine dealer. This witness will testify that YARBOROUGH was selling kilograms of cocaine for $39,000.00 per kilogram

and that YARBOROUGH frequently changed phones so that he could continue dealing in illegal narcotics while evading law enforcement.

8. **Protected Witness #8** – This witness will testify that she/he sold kilogram quantities of cocaine for defendant Demetrius YARBOROUGH. YARBOROUGH told the witness that YARBOROUGH received loads of cocaine and heroin from Mexican sources of supply and that the Mexicans arrive in Buffalo with approximately 50 kilograms of cocaine and four kilograms of heroin per load and travel to defendant YARBOROUGH's stash house on Marshall Street. This witness will testify that the cocaine and heroin is distributed to defendant YARBOROUGH's Buffalo based cocaine and heroin distributors and the Mexicans remain in Buffalo until the money for the cocaine and heroin is collected. This witness will also testify she/he arranged for a sale of one kilogram of cocaine, supplied by YARBOROUGH, to Protected Witness #7, which was captured on a recorded phone call.

9. **Protected Witness #9** – This witness will testify that in October of 2013, Protected Witness #8 contacted Protected Witness #9 to purchase one kilogram of heroin for $41,000.00 which was sourced by defendant Demetrius YARBOROUGH.

10. **Protected Witness #10** – This witness has known defendant Troy GILLON for many years and has conducted drug-related business with GILLON on countless occasions. In October, 2014, he told agents that GILLON could provide 5 kilograms of heroin for $68,000 per kilogram and that GILLON would charge him $42,000 per kilogram for cocaine. He will outline various admissions that GILLON made to him about his drug dealing operations. During one of their encounters with each other, agents captured video

footage of their meeting from a pole camera located at 95 North Transit Road in Lockport, NY. The witness will also give testimony about co-conspirators with GILLON, including Joseph Thompson and Trent Hamilton. The witness will further describe how in February 2015, GILLON expressed his interest in expanding his growing drug business into Canada and offered the witness up to 1 kilogram of heroin. The next day, GILLON is surveilled by law enforcement at the Niagara Falls Outlet Mall delivering 100 grams of heroin (DEA Exhibit 11) to the witness. GILLON continues to provide information to this witness including the fact that he is getting shipments of kilograms sent from California in microwaves and that he has already received 1500 kilograms of drugs by February 2015. In March of 2015, GILLON tells the witness about getting "China White" a/k/a Fentanyl.

11.     **Protected Witness #11** – In October, 2014, this witness contacted Michael MITCHELL and was intercepted by law enforcement agents who were listening to the call (Sessions 755, 756, 760, 761 from TT1). The witness will testify about the voices in the recording and explain that he/she contacted Michael MITCHELL to purchase a quantity of heroin.

12.     **Protected Witness #12** – This witness will testify that he/she used defendant Rashawn CRULE a/k/a Black as a source of supply for heroin. The witness can positively identify defendant CRULE's car as a blue Chevrolet Impala. CRULE approached this witness in February or March of 2015 at a gas station on the East Side of Buffalo and offered this witness samples of heroin. After this meeting, this witness purchased 1-2 grams of heroin from CRULE on a daily basis until April of 2016 when the quality of heroin became poor. This witness last purchased heroin from CRULE on July 15, 2016. This witness has personal

knowledge of Protected Witness #13 purchasing heroin from CRULE as well. This witness was able to provide two cellular telephones to law enforcement, which contained phone numbers for CRULE.

13. **Protected Witness #13** – This witness will testify that he/she was a raging heroin addict who purchased heroin on a daily basis from members of the GILLON drug trafficking organization. This witness also acted as a "drug runner" for the organization in order to support his/her own drug habit. After members of the organization were indicted, arrested and in pretrial confinement, this witness used defendant Rashawn CRULE a/k/a Black, as an alternate source of supply for heroin. This witness had CRULE's cellular telephone number saved in his/her phone in order to contact CRULE for heroin. The witness can also positively identify defendant CRULE's car as a blue Chevrolet Impala.

14. **Protected Witness #14** – This witness will testify that he knows defendant Herman AGUIRRE because AGUIRRE approached him in mid-2015 about a future drug trafficking opportunity. AGUIRRE told this witness that he had "a lot" of money and drugs available to him and that he supplied kilograms of cocaine and heroin to "black guys" in Buffalo, NY. AGUIRRE told this witness that AGUIRRE was sending 100 kilogram loads of cocaine and heroin to Buffalo, with 20-30 kilograms being heroin and the remaining 70-80 kilograms being cocaine. AGUIRRE was charging the Buffalo "black guys" $70,000.00 per kilogram. The last shipment AGUIRRE made to Buffalo prior to his arrest was 100 kilograms. AGUIRRE further told this witness that one of his shipments of 32 kilograms was intercepted when a family in Buffalo called the cops. AGUIRRE further told this witness that AGUIRRE only used Blackberry cell phones for conducting his drug trafficking business.

This witness will testify that AGUIRRE told her/him that AGUIRRE wants to get his drug business running smoothly again before he has to start serving his sentence on his current charge.

15.     **Protected Witness #15** – This witness is the landlord at 184 High Street and will provide information about that apartments 2 and 4 were being rented by Trent Hamilton and visited by Troy GILLON and Michael MITCHELL.

16.     **Protected Witness #16** – The witness assisted law enforcement with the early stages of the investigation into Troy GILLON.  The witness will describe how he/she assisted detectives with the Niagara County Drug Task Force with their search warrant application with Niagara County Supreme Court Justice Richard Kloch.  The witness gave information to the Court which then led to the issuance of the warrant authorizing the installation of a GPS tracker on Troy GILLON's vehicle.

17.     **Protected Witness #17** – PW 17 was initially charged in this indictment and agreed to plead guilty pursuant to a cooperation agreement.  He/she will testify in accordance with the proffer protected statements he/she gave to the government in the presence of his/her attorney.  For more information on this witness, please review the summary of the witness's interviews in his/her 3500 materials.

18.     **Protected Witness #18** – PW 18 was initially charged in this indictment and agreed to plead guilty pursuant to a cooperation agreement.  He/she will testify in accordance with the proffer protected statements he/she gave to the government in the presence of his/her attorney.  For more information on this witness, please review the summary of the witness's interviews in his/her 3500 materials.

19.     **Protected Witness #19** – PW 19 was initially charged in this indictment and agreed to plead guilty pursuant to a cooperation agreement.  He/she will testify in accordance with the proffer protected statements he/she gave to the government in the presence of his/her attorney.  For more information on this witness, please review the summary of the witness's interviews in his/her 3500 materials.

20.     **Protected Witness #20** – PW 20 was initially charged in this indictment and agreed to plead guilty pursuant to a cooperation agreement.  He/she will testify in accordance with the proffer protected statements he/she gave to the government in the presence of his/her attorney.  For more information on this witness, please review the summary of the witness's interviews in his/her 3500 materials.

21.     **Protected Witness #21** – PW 21 was initially charged in this indictment and agreed to plead guilty pursuant to a cooperation agreement.  He/she will testify in accordance with the proffer protected statements he/she gave to the government in the presence of his/her attorney.  For more information on this witness, please review the summary of the witness's interviews in his/her 3500 materials.

22.     **Protected Witness #22** – This witness was interviewed by law enforcement agents in Charlotte, NC regarding his knowledge of the drug dealing activities of the GIL/AGUIRRE DTO.  The witness will provide details regarding his familiarity with the participants and how he was asked to accompany members of the DTO to Washington, DC in October/November 2013 to deliver multi-kilogram quantities of cocaine.  He agreed and was given 33 kilograms at one location for delivery to two customers.  The witness will further provide testimony about the DTO shipping 100 kilograms of cocaine to Buffalo from Arizona in 2014.  The witness will admit that he has received approximately 150 kilograms of cocaine from the GIL/AGUIRRE DTO between sometime in 2013 and April 2014.  The witness will also testify about AGUIRRE setting up banking accounts in various cities and using the seafood business as a cover for laundering drug money.  The witness deposited approximately $1.2 million into the account for Triton Foods in the DC area.

23.     **Special Agent Shane Nastoff, DEA** – As the lead case agent from the DEA on this case, SA Nastoff will testify about the complete investigation from its inception and the ongoing nature of the case.  He will describe how the initial investigation into Trent HAMILTON and Michael MITCHELL progressed into a much larger operation once agents recognized the quantity of drugs being supplied by their sources.  At around the same time that Troy GILLON and Darryl WILLIAMS are becoming targets of the investigation in early 2014, the DEA in Los Angeles intercepted the seven kilograms of cocaine that were being shipped from the Montebello warehouse to addresses in Buffalo and Niagara Falls near the residences of Trent HAMILTON and Troy GILLON.  As the investigation continues in 2014 utilizing multiple law enforcement techniques, the DEA obtains the cooperation of Homeland Security Investigations and the Internal Revenue Service.  The case then gets

designated an Organized Crime Drug Enforcement Task Force (OCDETF) case named Operation Lockjaw. In October 2014, agents obtain a Title III Order authorizing the interception of phone communications from a phone identified as Michael MITCHELL's (TT-1). The following month, Orders are obtained for Trent HAMILTON's two phones (TT-2 and TT-3). By early 2015, the investigation has led to Troy GILLON as the source of supply in the Western New York area. By securing his cooperation, agents are hoping to develop the case into identifying the sources of supply in California and Mexico. By March, 2015, agents obtain and execute multiple search warrants at residences utilized by HAMILTON, THOMPSON, MITCHELL, and GILLON. On March 25, 2015, 32 kilograms of cocaine, heroin, and fentanyl are recovered from a Folger Street home in Buffalo used by Maulana LUCAS and Shirley GRIGSBY. In April 2015, 27 kilos of cocaine are seized by agents in Montebello from a van driven by a courier of the organization. By June, 2015, agents have identified the money laundering conspiracy and began to assemble records and interviews of relevant witnesses. The investigation yielded multiple indictments including the indictment charging AGUIRRE, GILLON, WILLIAMS, LUCAS, and GRIGSBY in July 2015 and later the Superseding Indictment charging all 17 current defendants in July 2016. SA Nastoff will testify about multiple other investigative steps throughout the case and the information which was obtained as a result. His testimony may be offered at multiple times throughout the trial and he will be recalled when a specific subject matter is covered.

24. **SA Jill Dennewitz, HSI (Chicago)** – SA Dennewitz will testify about a sophisticated money laundering operation that she and other federal partners dismantled during Operation King's Gold. Based in Chicago, the investigation revealed that the Sinaloa cartel in Mexico was shipping drugs throughout the United States and getting their money

laundered by converting the ill-gotten funds to gold. Their investigation revealed over $100 million dollars in laundered drug money that culminated with the indictment of 34 individuals in the Northern District of Illinois. On November 13, 2013, SA Dennewitz surveilled defendant Herman AGUIRRE meet with a cooperating source to deliver $70,000 in drug proceeds for laundering. She will identify the audio recordings and transcripts that were made relative to the phone communications between AGUIRRE and the informant prior to the meeting, and a body wire intercept during the meeting. She will further identify a surveillance video, which captured the meeting, and photographs that were taken of the money. She will further describe how after the meeting, she and other agents followed AGUIRRE out of Illinois and into Wisconsin where he travelled to a Best Western at the Milwaukee airport.

25.     **Mark Johnson, General Manager, Best Western Hotel (Milwaukee, WI)** – Mr. Johnson will testify that on December 9, 2013, he received a subpoena for records related to the guests staying at his hotel on November 13, 2013. He will identify the records he provided, pursuant to that subpoena, which include a receipt for defendant Herman AGUIRRE showing that he stayed at the hotel from September 1, 2013 until November 17, 2013. He will further identify a surveillance image from his hotel of AGUIRRE at the front desk.

26.     **Task Force Officer Alex Pozo, DEA (Los Angeles)** – TFO Pozo will testify about his investigation into Jose RUBEN GIL and his confederates beginning in October, 2013. At this point, TFO Pozo meets with an informant who explains how RUBEN GIL uses his tractor-trailer business to ship drugs across the country. TFO Pozo then locates and identifies the tractor-trailer being utilized by the GIL organization, which he found in

Commerce, California.  On October 31, 2013, TFO Pozo and his colleagues installed a judicially authorized GPS tracker on the tractor-trailer utilized by the GIL organization.  TFO Pozo will further testify that on January 14, 2014, he and several agents from the DEA set up surveillance on a warehouse located at 6865 East Washington Blvd. in Montebello, California.  He will describe the individuals who were surveilled and identified.  He will further testify about conducting the raid at the warehouse and encountering Sonia Hernandez inside.  Finally, he will describe the statement taken from Jose RUBEN GIL about his drug dealing activities.

27.     **TFO Sal Duarte, DEA (Los Angeles)** – TFO Duarte will testify about the Montebello warehouse raid on January 14, 2014.  He will discuss when he approached Brian Ortiz and seized packages containing cocaine.  He will further explain what took place at the warehouse when and additional five kilograms of cocaine were seized.

28.     **TFO Scharbach, DEA (Los Angeles)** – TFO Scharbach will testify about the Montebello warehouse raid on January 14, 2014.  He will explain how he intercepted two kilograms from Brian Ortiz, a confederate of Jose RUBEN GIL, at the United States Post Office in Whittier, California.  He also recovered a piece of paper from Ortiz which contained addresses in the Western District of New York.  He then transported the two kilograms of cocaine and the paper document to the Montebello warehouse and turned the evidence over to Detective R. Camuy of the Montebello Police Department.

29.     **Det. R. Camuy, Montebello Police Department** – Det. Camuy will testify about the Montebello warehouse raid on January 14, 2014 and his role in securing evidence seized from the raid.  He will also explain that he read Miranda rights to defendant RUBEN GIL prior to taking a statement from him.

30.     **Det. F. Avila, Montebello Police Department** – Det. F. Avila will testify about the Montebello warehouse raid on January 14, 2014 and his role in securing evidence seized from the raid.

31.     **Task Force Officer Eric Herrington, DEA** – As a veteran detective in the Lockport Police Department, TFO Herrington has been assigned to work as the designated officer assigned to the DEA.  He worked with SA Nastoff as his partner in this case and participated in nearly every aspect of the investigation.  As a result, he will be needed to supplement the testimony of SA Nastoff as to any part of the entire investigation.  TFO Herrington may also be needed to testify at more than one occasion during the trial and will be recalled if necessary to testify.

32.     **Special Agent David Turri, IRS** – SA Turri was the primary investigator assigned to the money laundering portion of the case.  He will provide the jury with an overview of the entire money laundering conspiracy and utilize summary charts that he prepared to explain the flow of money.  He will explain the records that he obtained via subpoena from each of the three companies named in the indictment: Triton Foods, Fresh Choice, and Kamora Investments.  He will further detail and explain the voluminous banking records which show the deposits of large quantities of cash in Western New York and

elsewhere on the east coast. That money then gets withdrawn at banks in California or transferred to other accounts in California and Mexico.

33.    **SA Kristopher Caraher, Homeland Security Investigations** – SA Caraher was the lead investigator assigned by the Department of Homeland Security. He will testify about the extent of the investigation and the role he played in obtaining records related to domestic and international travel. He will be called to authenticate records maintained by the United States Customs and Border Protection which reveal the land and air crossings into Mexico by members of the DTO, including GIL, AGUIRRE, and ALFARO.

34.    **Det. Stephen Reed, Niagara Falls Police Department** – Detective Reed assisted with the search warrant on March 10, 2015 at 1154 LaSalle Avenue, being utilized by Michael MITCHELL. Det. Reed will identify several items of evidence that were recovered including cellphones which later were downloaded and which contain evidence of the conspiracy.

35.    **SA David Leary, Drug Enforcement Administration** – SA Leary will testify about taking the phones seized by Det. Reed at 1154 LaSalle Avenue and downloading them pursuant to a search warrant. He will explain the process he used to access the phones and authenticate the reports containing the contents from the phone downloads. He will also testify regarding the seizure of digital scales from the residence.

36.    **SA David Turner, Drug Enforcement Administration** – SA Turner will testify about assisting with a search warrant executed at 184 High Street and identify the items of evidence seized from the residence.  He will also describe the seizure of cellphones and downloading them pursuant to a search warrant.  He will explain the process he used to access the phones and authenticate the reports containing the contents from the phone downloads.  This witness will also testify regarding the federal search warrant executed on Darryl WILLIAM's residence, 9234 Niemel Drive, Apartment 3, Niagara Falls, NY on July 31, 2015.  This witness seized various documents pertaining to Darryl WILLIAMS, a kilogram wrapper from cocaine, a money counter box, a large freight scale, and phones.

37.    **Officer John Kujawa, Buffalo Police Department** – This witness will testify that he was part of a law enforcement entry team on March 25, 2015 that made entry to Maulana Lucas's apartment at 9234 Niemel Drive, Apartment 1, Niagara Falls, NY.  This witness and his K-9 Destro recovered a black digital scale from the closet in the kitchen, which contained cocaine residue.  The item was submitted to Erie County CPS Lab for examination.

38.    **Investigator Mike Leggett, Niagara County Drug Task Force** – This witness will testify that he was part of a law enforcement entry team on March 10, 2015 that made entry to Joseph THOMPSON's home at 248 Elmwood Avenue, Lockport, New York.  This witness recovered a black shaving kit that contained heroin, crack cocaine and fentanyl.

39.    **PO Marcus Rogowski, Buffalo Police Department** – Officer Rogowski will testify that on March 23, 2015, he received dispatch to travel to 98 Folger Street in South Buffalo to see about a family dispute.  When Officer Rogowski arrived, he was led by a family

member of defendant Shirley GRIGSBY to a bedroom where a duffle bag with kilograms of suspected drugs were discovered. Thereafter, he contacted several members of the Buffalo Police Department and the DEA who arrived on scene to assist with the investigation.

**40.    Det. Henry Velez, Buffalo Police Department** – Det. Velez is assigned to the Crime Scene Unit of the department and responded to 98 Folger on March 23, 2015. He will testify that he recovered three duffle bags containing 32 kilogram packages. He will testify about how he catalogued and photographed the evidence seized at the residence and identify the items which he later submitted as evidence at the Erie County Central Police Services Forensic Laboratory.

**41.    Det. Thomas McCarthy, Buffalo Police Department** – On March 23, 2015, Det. McCarthy assisted with the seizure on Folger Street. Later at the police station, he obtained a consensual DNA swab of Shirley GRIGSBY, which was later submitted at the CPS Laboratory.

**42.    Det. Pat Hennegan, Niagara County Drug Task Force (Retired)** – Det. Rodriguez will testify that he was contacted by the Buffalo Police Department on March 23, 2015 regarding the large seizure at 98 Folger Street. That evening, he set up surveillance on the known address for LUCAS at Niemel Drive and watched for any activity. He then observed a rental vehicle (Toyota Avalon) being driven by LUCAS in the parking lot. After stopping the vehicle, the detective took LUCAS into custody and impounded the vehicle. A search warrant was later obtained which revealed nearly $100,000 in the trunk, which was just picked up by LUCAS in Baltimore, MD.

43.     **Criminal Investigator Daniel Redmond, Attorney General's Office** – This witness will testify that he was a police officer with the Buffalo Police Department and that on March 24, 2015 took the buccal swab of Maulana LUCAS's cheek which was submitted to the forensic laboratory for testing.

44.     **Det. James Maroney, Buffalo Police Department** – Det. Maroney is assigned to the Crime Scene Unit at the Buffalo Police Department. On March 24, 2015, Det. Maroney assisted with the execution of a search warrant for the Toyota Avalon operated by defendant LUCAS the evening before. He will detail the documents and personal belongings recovered from the vehicle, and the nearly $100,000 seized from inside the trunk of the vehicle.

45.     **Detective Leo McGrath, Buffalo Police Department** – This witness will testify that on October 9, 2015, he obtained a search warrant from Buffalo City Court Judge Diane Wray for 22 Carl Street and targeting Demetrius YARBOROUGH. On the same date, Det. McGrath assisted with the execution of the warrant and he assisted with the seizure of three (3) cocaine kilogram wrappers from the 22 Carl Street residence.

46.     **Detective Anthony Lapiana, Buffalo Police Department** – This witness will testify that he submitted the three cocaine kilogram wrappers seized on October 9, 2015 from the residence of Demetrius YARBOROUGH, located at 22 Carl Street, to the forensic lab for DNA testing.

47.     **Task Force Officer Randy Fry, Drug Enforcement Administration** – On November 2, 2015, TFO Fry recovered a set of keys from defendant Rashawn CRULE's

vehicle after CRULE was detained by federal officers. TFO Fry will testify that he used the keys to open the outer security door and inner side door to 98 Gillette Avenue. After the living space was cleared TFO Fry used a key from the key ring and opened the padlock on the basement door. TFO Fry will testify about items he seized from the building and placed into DEA custody.

48.     **Task Force Office Mike Stempki, Drug Enforcement Administration** – This witness will testify that he saw defendant Rashaw CRULE arrive at 98 Gillette Avenue on November 2, 2015 and assisted with the search and seizure of 98 Gillette Avenue.

49.     **Task Force Officer Zawierucha, Drug Enforcement Administration** – This witness will testify about the surveillance he conducted on November 2, 2015. He saw defendant Rashawn CRULE's blue Dodge Dakota operated by CRULE and can testify that he followed CRULE from the Rich Street area of Buffalo to 98 Gillette Avenue.

50.     **Task Force Officer Kevin Schilling, Drug Enforcement Administration** – This witness will testify regarding the evidence he seized, including drugs and a gun, which were hidden in the rafters of the basement ceiling of 98 Gillette Avenue.

51.     **Special Agent Brian Chella, Drug Enforcement Administration** – This witness will testify about the controlled buys with defendant Rashawn CRULE, which were conducted in October of 2015. SA Chella will also testify that after CRULE was arrested, he read CRULE his rights and CRULE waived those rights, agreeing to speak with SA Chella. SA Chella will testify that CRULE told agents that in mid-2015, he received five kilograms

of heroin from Troy GILLON. CRULE further told SA Chella that GILLON received information from a mutual friend, Lee Barge, that CRULE was living in the Buffal area and able to move large volumes of cocaine and heroin. CRULE said that Barge lives in Charleston, West Virginia and served a federal sentence with GILLON. According to CRULE, over time, he paid $350,000.00 in cash for the heroin directly to Troy GILLON. In October of 2015, CRULE delivered $175,000.00 in cash to Troy GILLON's son, Troy GILLON, Jr. to pay off a drug debt. SA Chella will testify that CRULE told him that the money seized at 22 Homer Avenue was drug proceeds from heroin sales and that he has several heroin customers in and around the Buffalo, New York area who regularly obtain 100-200 gram quantities. SA Chella will also testify that CRULE advised that his major heroin competitor on the East Side of Buffalo is a black male identified as Donte Lee. CRULE said that Lee is obtaining large quantities of heroin and approached CRULE in late 2015 about obtaining heroin at a cheaper rate. According to CRULE, Lee is utilizing another black male who lives on Hastings Avenue and drives a gray Cadillac, identified as Mario Hayes to distribute heroin. CRULE told law enforcement that Lee used a stash house near Michigan and Dodge Street, and that CRULE could obtain five kilograms of heroin from Lee.

52.     **TFO Clinton Calloway, Drug Enforcement Administration** – This witness will testify about the execution of the search warrant at defendant Rashawn CRULE's home, located at 22 Homer Avenue, Buffalo, New York. He will also testify about the money seized from this location and how it was turned over to the protective custody of the DEA.

**53.     TFO Valentine Zimniewicz, Drug Enforcement Administration** – This witness will testify about the execution of the search warrant at defendant Rashawn CRULE's home, located at 22 Homer Avenue, Buffalo, New York.  He will also testify about the firearms evidence, which he submitted at the Erie County Central Police Services Laboratory.

**54.     Detective Terry Walsh, Buffalo Police Department** – This witness will testify that on November 2, 2015, pursuant to a search warrant, he seized U.S. cash inside Rashawn CRULE's house, located at 22 Homer Avenue, Buffalo, New York.

**55.     Detective Sean Charleson, Buffalo Police Department** – This witness will testify that on November 2, 2015, pursuant to a search warrant, he seized U.S. cash inside Rashawn CRULE's house, located at 22 Homer Avenue, Buffalo, New York.

**56.     Service Representative from T-Mobile USA (TT-1)** - This witness will testify as to the evidentiary foundation, if necessary for the admission of intercepted wire communications in this case.

**57.     Service Representative from AT&T Corporation (TT-2 and TT-3)** – This witness will testify as to the evidentiary foundation, if necessary for the admission of intercepted wire communications in this case.

**58.     SA James McHugh, DEA** – SA McHugh will describe the process by which the wire recordings are obtained and catalogued by the agency.  He will authenticate these recordings seized in this case and testify about how the original calls were preserved.  SA

McHugh will also testify about three (3) search warrants that were executed for 1179 Broadway, 98 Gillette Avenue, and 22 Homer Street in Buffalo, New York. $74,878.00 U.S. currency was found at 22 Homer Street, which is defendant Rashawn CRULE's home. One 14 karat gold necklace was also seized from the residence. The search of the 98 Gillette Avenue stash house used by CRULE resulted in the seizure of one (1) 9mm Luger pistol, 11 rounds of 9mm ammunition, 228.1 grams of heroin, 98.0 grams of fentanyl, 131.2 grams of cocaine base, and 11.3 grams of cocaine. Tools of the drug trade, such as a scale and black wax envelopes were also seized from this location.

59.     **Representative for STX Shipping** – This witness will testify as to the evidentiary foundation, if necessary for records related to 29 pallets shipped from California to Western New York by members of the DTO.

60.     **Representative for Road Runner Shipping** – This witness will testify as to the evidentiary foundation, if necessary for records related to 29 pallets shipped from California to Western New York by members of the DTO.

61.     **Representatives from local seafood importers and distributors** – The government will provide the names at a later date of representatives from Wegmans, Tops Markets, and Dash's supermarkets regarding the market, or lack thereof, for sea cucumbers in the Western New York area.

62. **Representative for multiple domestic airline companies** – The government will provide the names at a later date of representatives from American Airlines (formerly US Airways), Southwest Airlines, Delta Airlines, and United Airlines, to authentic travel records for defendants AGUIRRE, GILLON, WILLIAMS, and LUCAS relative to travel between Western New York, California, and other cities.

63. **Representative for Western Union** – This witness will testify as to the evidentiary foundation, if necessary, for records related to wire transfers of money between members of the DTO.

64. **Representative for several U.S. rental car companies** – The government will provide the names of several representative from companies who provided records of rental vehicles used by members of the DTO to transport drugs and money for the organization.

65. **Representative for Bank of America** – This witness will testify as to the evidentiary foundation, if necessary, for records related to banking by members of the DTO. They will also identify and authenticate several surveillance images from the bank of members of the DTO making deposits at branches in the Western New York area.

66. **Candy Skrobacz, Bank of America** – Ms. Skrobacz will testify about meeting with defendant Herman AGUIRRE in June 2013 at the Dick Road branch or the bank. She will identify the defendant, as she did in a photo array in August 2015, as the person who

requested a night deposit key for his cash business of seafood imports. She will further describe the conversations they had and the process of issuing night deposit keys.

**67.    Detective Leonard Guaguliano (Retired), Niagara County Drug Task Force** – This witness will testify that he placed the global positioning system tracker on defendant Troy GILLON's vehicle in accordance with the search warrant authorized by Judge Kloch. The system was then removed by SA Shane Nastoff.

DATED:  Buffalo, New York, September 24, 2018.

JAMES P. KENNEDY, JR.
United States Attorney

BY:    s/MEGHAN A. TOKASH
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5860
Meghan.Tokash@usdoj.gov

BY:    s/MICHAEL P. FELICETTA
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5893
Michael.Felicetta@usdoj.gov