1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

2

_____

3    **UNITED STATES OF AMERICA,**

Case No. 1:15-CR-143

4                 Plaintiff,                              (LJV)

5    vs.                                    May 8, 2018

6    **JOSÉ RUBEN GIL,**
     a/k/a Unc, a/k/a Ruben Gil Campos,

7    a/k/a Mayor of Mexico,

8                 Defendant.
     _____

9

**TRANSCRIPT OF ORAL ARGUMENT**

10    **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
      **UNITED STATES DISTRICT JUDGE**

11

12    APPEARANCES:            JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY

13                            BY: MEGHAN A. TOKASH, ESQ. and
                                  MICHAEL P. FELICETTA, ESQ.

14                            Assistant United States Attorneys
                              Federal Centre

15                            138 Delaware Avenue
                              Buffalo, New York 14202

16                            For the Plaintiff

17                            LAW OFFICES OF JOSEPH M. LATONA
                              BY: JOSEPH M. LATONA, ESQ.

18                            403 Main Street
                              Suite 716

19                            Buffalo, New York 14203
                              For the Defendant

20

      PRESENT:               JOSÉ RUBEN GIL, via video teleconference

21

      DEPUTY/LAW CLERK:      ALLISON P. GIOIA, ESQ.

22

      COURT REPORTER:        ANN M. SAWYER, RPR, CRR, NYRCR, NYACR

23                              Notary Public
                              Robert H. Jackson Courthouse

24                            2 Niagara Square
                              Buffalo, New York 14202

25                            Ann_Sawyer@nywd.uscourts.gov

1          (Proceedings commenced at 2:11 p.m.)

2          THE CLERK:  All rise.  United States District Court

3  for the Western District of New York is now in session, the

4  Honorable Lawrence J. Vilardo presiding.

5          15-CR-143, United States of America versus José Ruben

6  Gil.

7          Assistant United States Attorneys Meghan A. Tokash

8  and Michael P. Felicetta appearing on behalf of the

9  government.

10          Attorney Joseph LaTona appearing on behalf of

11  defendant Gil.  Defendant Gil is participating by

12  videoconference.

13          This is the date set for oral argument.

14          THE COURT:  Good afternoon, everyone.

15          ALL PARTIES:  Good afternoon, Your Honor.

16          THE COURT:  Mr. Gil, can you hear us?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Okay.  Thank you.

19          So, Mr. Latona, you asked for further oral argument.

20          MR. LaTONA:  Judge, I did.  And I just want to

21  highlight just a couple of things, a couple of which I noted

22  in the government's response.

23          If Your Honor will recall, the last time we were

24  here, Your Honor specifically wanted the parties to see if

25  they could procure copies of indictments regarding the various

1  cases cited on both sides of the issue, and also Your Honor

2  wanted to get a copy of the statements that we say were

3  improperly extracted from Mr. Gil.  And so we filed those --

4  those documents, the ones that I could get my hands on.

5  Judge, just briefly to go over it, if I can, I think

6  the one thing that the government has never addressed and the

7  magistrate judge never addressed in his report and

8  recommendation is the clear-cut language in Rule 12 which

9  states as, you know, goes through the various lists of motions

10  to be made prior to trial.  In the subcategory of a defect in

11  the indictment, it includes a lack of specificity.  They've

12  never addressed that, and neither did the magistrate judge.

13  Nor, in my view, have they addressed the critical

14  portion of the Joiner decision.  I mean, they talk about the

15  fact that one of the issues those people raised was you can't

16  aid and abet a CCE.  That has nothing to do with this case.

17  What has to do with this case is the second argument

18  that they made, wherein the Court indicated that the CCE count

19  was deficient and flawed in that it did not with specificity

20  identify the three violations that purportedly made up the

21  continuing series.

22  THE COURT:  And that argument had not been raised at

23  the trial level; is that right?

24  MR. LaTONA:  That's correct.

25  THE COURT:  Yeah.

1    MR. LaTONA:  It was a plain error review, and that's

2    why they lost on it.  Obviously, we're not in that territory

3    here, as we're still in the pretrial phase, but --

4    THE COURT:  Let me ask you this.

5    MR. LaTONA:  Sure.

6    THE COURT:  The preamble that was incorporated in

7    that case, the introduction, whatever they call it in the

8    indictment, was a lot less specific than the one here.

9    I mean, here, each -- each defendant is dealt with,

10   and they discuss what the defendant did, and then the CCE

11   count incorporates that.

12   In the Joiner case, the indictment had some general

13   category.  So they said here's what managers did.  Here's

14   what, you know, the street-level people did.  Here's what --

15   and then they attached names to those categories at the very

16   end.

17   But they don't do what the government did here in

18   terms of explicitly attaching conduct to individual

19   defendants.  Why isn't that the difference that makes the

20   difference here?

21   MR. LaTONA:  Because there's not enough there, Judge.

22   I mean, the only thing with specificity that I have seen in

23   the introduction in this case is Mr. Gil's arrest in January

24   2014.  Other than that, it's all generalities and whatnot

25   akin, in my view, to what is in Joiner.  Because when you look

1    at the specific things, they were picking up dope from

2    suppliers in New York City, they were taking it to Binghamton,

3    New York, they were distributing it through nightclubs and

4    various locations, and things of that kind.  And so I think

5    they're both very too general in order to comply with Rule 12

6    as the Court found in the Joiner decision.

7          Now, the other thing that the government did assert

8    in its last filing was an argument that the Pinkerton theory

9    in some fashion could apply to this case.  And I think their

10   argument is, well, under Pinkerton, all of these substantive

11   Title 1 violations in which Mr. Gil is not charged as a

12   defendant is somehow in furtherance of the CCE situation.

13         Now, they cited a bunch of cases in that, but the one

14   case they cited, one of them is this Hoover decision -- or,

15   the Baker decision, I'm sorry, which basically says if you're

16   going to proceed on a Pinkerton theory, you've got to allege

17   it in the indictment.

18         Now, ironically, and I want to invite Your Honor's

19   attention to -- this is my document 442, the Joiner

20   indictment, this is Exhibit A at pages 17 and 18.  And here

21   is --

22               THE COURT:  Hang on.  Hang on.

23               MR. LaTONA:  Yes, Judge.

24               THE COURT:  Bear with me for a second.

25               MR. LaTONA:  Sure.

1          THE COURT:  Okay.  17 and 18 of Exhibit A.

2          MR. LaTONA:  Yes, Judge.

3          THE COURT:  So 17 of 88, and 18 of 88?  Oh, I'm

4    sorry.  Do you mean Counts 5 to 37 of that document?  Is that

5    where you are?

6          MR. LaTONA:  Exactly.

7          THE COURT:  Great.  Okay.  I'm there.  I'm there.

8          MR. LaTONA:  Now, the difference is, those were the

9    substantive counts which -- in which the two complaining

10   defendants to the 2nd Circuit were not named.

11          However, when you read that language, and this is

12   what the grand jury apparently found, that the CCE defendants

13   and the conspiracy defendants as alleged in 1 and 2 of the

14   indictment reasonably foresaw that the coconspirators would

15   distribute cocaine.

16          So there was a Pinkerton theory specifically found by

17   the grand jury, specifically included in this particular

18   indictment, and yet even that did not save it from the

19   recognition by the 2nd Circuit that the count itself was

20   deficient and defective.

21          The other thing is, Judge, and I -- and this Baker

22   case that they cited said, look it, you have to allege a

23   Pinkerton theory, otherwise you get into issues of

24   constructive amendment, things of that kind, if they're going

25   to approve things that haven't been properly pled and that

1    what we can confront.

2         But that's pretty much what I had to say about

3    Count 1.  I think it's defective under the rule.  I think it

4    should be dismissed.  And if Your Honor sees fit to do that,

5    may be they'll take it to New York and then there will be a

6    definitive rule.

7         THE COURT:  And you don't think it can be remedied by

8    a bill of particulars?

9         MR. LaTONA:  I don't, Judge, and here's way.  My

10   client has a right to be tried on exactly what was founded by

11   the grand jury.  A bill of particulars is basically what the

12   government has to say, and I don't think it's sufficient.

13        Now, obviously, and I think I said it the last time,

14   I mean, if I'm going to lose on one, I'll take whatever I can

15   get.

16        But I think, Judge, that opens up a Pandora's box as

17   to potential issues of constructive amendment and things of

18   that kind because -- and, you know, the other thing about a

19   bill of particulars, I just want to say this.  I don't know in

20   my experience in this Court, I don't know of any instance

21   where a prosecutor was held to a bill of particulars when he

22   or she could demonstrate good cause that we didn't have this

23   information before a particular date.

24        Rule 7 is very clear.  It can be amended at any time

25   based on good cause shown.  That's pretty much it.

1          The other thing is our position on the statements

2   in --

3          THE COURT:  I want to do the --

4          MR. LaTONA:  Sure.

5          THE COURT:  -- I want to do the -- I want to do the

6   indictment first.

7          MR. LaTONA:  Sure.

8          THE COURT:  The CCE count first.  So, Mr. Felicetta,

9   are you going to argue?

10         MR. FELICETTA:  Yes, Judge.

11         THE COURT:  Okay.  So let me read to you from Joiner.

12         There was nothing in the indictment identifying which

13  three violations served as the predicate for the CCE charge.

14  It thus appears that the indictment was deficient under

15  Richardson.

16         Where in the indictment is there an identification of

17  the at least three violations that serve as the predicate for

18  the CCE charge here?

19         MR. FELICETTA:  So I laid that out in my document 447

20  I filed, Judge, which I laid out exactly and specifically more

21  than three different violations that were listed in this

22  indictment.

23         And bear in mind here, it's easy to -- it took me a

24  long time to understand this, but it's easy to get lost here

25  in the difference between what the issue was in Joiner and the

1    cases that I cited in Pinkerton and Baker and the like.

2          One, the Joiner case, talks about not even alleging

3    the predicate acts to substantiate the CCE charge in the first

4    instance.

5          The Pinkerton and the Baker cases are talking about a

6    totally different thing.  They're talking about whether you

7    can you use accomplice liability as a basis for predicate

8    acts.

9          Those are two totally different things, and they're

10   hard to conceptualize.  And I had to read these cases a dozen

11   times before I understood it.

12         But it sounded to me, with all due respect to defense

13   counsel, that the issues are being kind of blended here, and

14   they're distinct issues.

15         In this indictment, unlike in Joiner, in this

16   indictment, we are alleging that José Ruben Gil was the leader

17   of this drug distribution organization.  We are alleging in

18   the introductory paragraphs that José Ruben Gil conspired with

19   others.  That's one predicate act.

20         Although the 7th Circuit doesn't consider conspiracy

21   a predicate act, the 2nd Circuit does.  That's a predicate

22   act.

23         And then when you read through and read about

24   paragraph 6, paragraph 7, and so forth, it lays forth exactly

25   and specifically what José Ruben Gil was doing.  He was

USA v Jose Ruben Gil - Oral Argument - 5/8/18

1    obtaining and procuring cocaine, fentanyl, and heroin, and

2    shipping it to the Western District of New York.

3              And it specifically lays out who he was shipping it

4    to.  It lays that out later in paragraph 12, when it says

5    Maulana Lucas was receiving quantities shipped by José Ruben

6    Gil.  And then it lays out exactly what Maulana Lucas did.

7              That's accessorial liability.  He is responsible for

8    every act that flowed thereafter.

9              So when Maulana Lucas picks up the pallet from this

10   defendant, and then breaks it up with Darrell Williams, and

11   then sells it off to Troy Gillon, or whomever else, all of

12   those substantive accessorial acts relate back to the act

13   which the defendant did.  Which is pled in the indictment with

14   specificity.

15             This is not Joiner.  This isn't even close to what

16   happened in Joiner.

17             THE COURT:  For two reasons you're saying, one,

18   because the, as I asked Mr. Latona, that the preliminary

19   allegations in Joiner were a lot more vague than here, and

20   secondly, because Joiner is, in your view, addressing a

21   different issue than we're addressing here.

22             MR. FELICETTA:  Right.  And the two people where

23   there was an issue with in Joiner, Barrett and Sweat, they're

24   mentioned as, quote, manager and supervisor of the CCE.  And

25   then the prosecution doesn't say a word else about them,

1    nothing.  Doesn't explain how, with whom.

2          That's not what we did.  That's not what this grand

3    jury heard and voted on.  They heard specifically what his

4    role is.

5          And he's not even, you know, a sub player.  He's the

6    top of the chart.  He's the guy who is sending all of this

7    narcotics to the Western District.  And so every act that

8    follows, he's responsible for.  We just don't have three, we

9    have a dozen, I think, just on this indictment.

10          THE COURT:  Let me ask you this.  You say that the

11   2nd Circuit in Flaherty has specifically held that the

12   government may rely on violations that are not charged

13   anywhere in the indictment --

14          MR. FELICETTA:  Right.

15          THE COURT:  -- in establishing the violations.

16          The defendant has to have notice of what you're going

17   to prove, right?

18          MR. FELICETTA:  He does.  He does.  Through

19   discovery.

20          THE COURT:  Okay.  But --

21          THE DEFENDANT:  Excuse me.  Mr. LaTona?  Joe?

22          MR. LaTONA:  Okay.

23          THE COURT:  We should -- if -- if he wants to talk to

24   you privately, we should obviously not do it in this context.

25          THE DEFENDANT:  Oh, okay.

USA v Jose Ruben Gil - Oral Argument - 5/8/18

1        MR. LaTONA:  Yeah, we can't communicate like this in

2    the middle of court.  We have to talk later.  Now, do you want

3    me to try to talk to you separately now or later?  Can we

4    communicate after the court appearance?

5        THE DEFENDANT:  There is no way that I can

6    communicate with you, but --

7        MR. LaTONA:  Well, yeah, we -- see, this is on the

8    record, and everybody is listening to it.  And, you see, we

9    have to have confidential communications one on one.  Do you

10   know?

11       THE DEFENDANT:  Oh.  Okay.  Because what the U.S.

12   Attorney is saying --

13       THE COURT:  Yeah, we don't want to get into this,

14   Joe.

15       MR. LaTONA:  Yeah, yeah, we can't really get into

16   this with the Court.

17       THE DEFENDANT:  Oh, okay.

18       MR. LaTONA:  Okay?

19       THE COURT:  Okay.  So, Mr. Felicetta, you're saying

20   that the notice can be provided in discovery, it doesn't have

21   to be provided in the indictment?

22       MR. FELICETTA:  As long as the indictment tracks the

23   language of the statute and gives them proper notice as to

24   what his -- at least three predicate acts are, there are many,

25   many, many other predicate acts which we can then use to

1  establish in front of a petit jury.

2       THE COURT:  Within the umbrella of the acts that

3  you've alleged this defendant was involved in?

4       MR. FELICETTA:  That's right.

5       THE COURT:  Yeah.  Okay.

6       MR. FELICETTA:  And so there's going to be things

7  like, for example, through discovery, he knows that on a

8  specific date, he shipped 5 kilos that were intercepted and

9  then later made a confession to it, which is the second issue

10 for us here today.

11      That's a predicate act that is not substantively

12 charged in the indictment because it was resolved in

13 California and pled to in California.  But, it is nevertheless

14 an act which would be part of the conspiracy, and a predicate

15 act which, under Flaherty, we can use to tell the jury, hey,

16 there's one more predicate act to show a continuing series of

17 criminal acts by the defendant.

18      THE COURT:  Okay.  Let's -- let's get to that second

19 point.  Let's get to the statements.

20      What was he convicted of?  What did he -- he pled in

21 California, right?

22      MR. FELICETTA:  Right, he pled to a drug distribution

23 charge under California state statute.

24      THE COURT:  Okay.  He didn't plead to an amount, did

25 he?

1        MR. FELICETTA:  I think there is a -- well, let me

2   check, Judge.  I think I might have that.

3        THE COURT:  It didn't look that way to me, so

4   here's -- here's where I'm coming from on the statement.

5        MR. FELICETTA:  Yeah, I'm sorry, Judge.

6        THE COURT:  Let me just put my cards on the table and

7   tell you where I'm coming from on the statement.

8        It seems to me that the statement encompasses more

9   than the plea in California, and that there may be parts of

10   the statement that are broader than what was established by

11   the plea in California.  And if that's true, then I think

12   there may be an issue with respect to what the magistrate

13   judge decided, which basically was -- and I'm -- I'm not doing

14   this technically correctly or not saying this technically

15   correctly, but basically said it's moot because he pled in

16   California, he's already admitted to that conduct, and

17   therefore, I don't need to hold a hearing on voluntariness

18   because -- because it's -- it's a moot point, because it's

19   already been admitted.

20        And when I read the statement, it seemed to me that

21   there is more in the statement than there is in the plea.  And

22   if that's the case, then while, you know, some of what's in

23   the statement may be beyond dispute, or at least the defendant

24   would be estopped from challenging it, there's other stuff

25   there that I think -- I think survives that challenge.

1        MR. FELICETTA:  I understand what the Court's saying,

2   Judge, and if I could address that.

3        THE COURT:  Yes.

4        MR. FELICETTA:  I think the reason why the magistrate

5   judge got it right when he agreed with us that he is

6   collaterally estopped from challenging the statement is not

7   just what happened in California, which I think in and of

8   itself is enough to collaterally estop him.  Because if you

9   look at the sum and substance of what happened in California,

10  here he is charged in state court with a number of violations.

11       I attached to docket 240 the certificate of

12  conviction and his plea colloquy.  But he was charged with a

13  number of state violations which -- which charge him with

14  distribution of cocaine, or attempted distribution of cocaine

15  from California.  And, as you know, the kilos of cocaine were

16  intercepted at the U.S. Post Office before they left the State

17  of California.

18       And when he's charged in that serious state

19  indictment, which has very serious sentencing ramifications,

20  he has a statement wherein he acknowledges it was his, he

21  possessed it, he packaged it, and he intended to distribute it

22  to Buffalo.  All those --

23       THE COURT:  What's "it?"

24       MR. FELICETTA:  The packages containing kilograms.

25  It was actually boxes with air filters in them, and hidden in

1    them were kilos of cocaine.

2            THE COURT:  But I don't have in front of me what he

3    admitted to in California, do I?

4            MR. FELICETTA:  I attached that as docket 240-1, is

5    the Superior Court of California, County of Los Angeles

6    certificate of conviction.  And it includes all of the

7    criminal proceedings in it.

8            And then I attach -- I'm sorry, Judge, the transcript

9    I attached relates to the federal court matter, which is what

10   I wanted to address next.

11           But if I could go back for just a second.

12           THE COURT:  Go ahead.

13           MR. FELICETTA:  So what he essentially pled to there

14   and the ramifications of the sentencing, he had the statement

15   that he made, and he had the opportunity and the right to

16   challenge it under California law.

17           And he decided there's nothing to challenge here.

18   There's no Fourth or Fifth Amendment issue.  I'm going to

19   enter a plea of guilty, and waive any challenge.

20           THE COURT:  Well, I'm not so sure that entering a

21   plea of guilty means there's no Fourth or Fifth Amendment

22   issue, it may mean I don't choose to bring one.  I may have a

23   Fourth or Fifth Amendment issue, and I choose -- and I choose

24   not to bring that issue because I've been offered a plea that

25   I'm willing to take.

1        But I'm -- but I'm pleading to possessing narcotics

2   with intent to distribute them, I'm not pleading to

3   possessing, you know, 10 kilograms of cocaine with intent to

4   distribute it, I'm pleaded to something different than that.

5        So when he admits that he gets, you know, 13 pack --

6   or, he received ten packages, three were sent out and, you

7   know, they were kilos of -- the items that were found in the

8   office are kilos of cocaine, I sent a payment for two to

9   receive two, and I was sent 2 kilos of cocaine.  I sell them

10  for $30,000 each.  That's a lot of detail that I don't think

11  is encompassed in the plea in California.

12        MR. FELICETTA:  Yeah, but that's not -- with all due

13  respect, Judge, that is not what these cases for collateral

14  estoppel talk about.  They don't say that the statement has to

15  match up with the plea colloquy.

16        They're saying that if you had a statement that you

17  made, an admission, and then later you don't make any effort

18  to challenge it, you enter a guilty plea, and the second part

19  of this is it's not just what happened in California because

20  after he goes to -- he's in California, he's brought before

21  United States District Court Judge -- Judge Wood, Kimba Wood

22  in the Southern District of New York.  And whereupon he is

23  arraigned on a violation of supervised release for the same

24  conduct.  And the that proceeding, knowing that he faces

25  significant jail time that could be consecutive in a federal

1   court, he again, without any effort before United States

2   District Court Judge, he doesn't challenge the statement.

3          Only now, when he's brought -- when we've brought

4   this indictment, now he says, well, I want to challenge the

5   statement.

6          And that's what these cases I've cited talk about.

7   They say you had your opportunity not once, but twice.  You

8   didn't take those chances, and now you want to litigate it

9   here.  And the best time to litigate those statements would

10  have been when they were made.  And now you put the government

11  at a disadvantage that we have to now have a suppression

12  hearing on statements made four years ago or five years ago

13  because now the stakes are high enough for you?  That's not

14  how this works.

15         And under Gregg, he's collaterally estopped from

16  challenging it.  And I think that's why the magistrate judge

17  agreed with us, because that's what the cases cite.

18         MR. LaTONA:  Judge, I think he's totally misread the

19  collateral estoppel doctrine.  I submit Gregg supports us, and

20  I think the Supreme Court case that I cited, Haring versus

21  Prosise, and they basically rejected the argument that he

22  said, and as Your Honor indicated, it may have been back then

23  he made a decision not to challenge it.

24         But the thing is this, in order to have collateral

25  estoppel, there must be issue preclusion, which means you've

1   raised the issue and you've lost the issue.

2          And we all know that you can have someone who enters

3   a plea of guilty to the underlying offense, however, evidence

4   had been improperly seized either from his person or from his

5   property.  And the seizure or the statement was not an issue,

6   there's no issue of preclusion.  I think they've totally

7   misread it.  We have an affidavit from him based upon his

8   medical situation, he asserted his right to counsel at that

9   time.

10          And here is the distinction.  We are only seeking to

11   challenge the statement that was extracted from him in January

12   2014, we're not challenging the plea in California or the plea

13   in New York City.

14          Now, they can moot it all out by saying we're not

15   putting anything in, and I haven't heard them say that yet.

16          And one last thing, Judge.  When they talk about --

17   on -- and this is on the dismissal situation, okay?  When you

18   look to the substantive counts in this indictment, nowhere is

19   he listed as an aider or an abettor.  Okay?  So -- so his

20   argument that these can be -- as far as I'm concerned, there

21   was a constructive no bill by the grand jury that he had

22   nothing to do with it.

23          And that's, again, why we need the --

24          THE COURT:  He had nothing to do with what?

25          MR. LaTONA:  The substantive distribution counts that

```
 1    are alleged in other counts of this indictment.

 2            He's not named as an aider and abettor, like

 3    Mr. Felicetta claimed that he was.  Absent the grand jury

 4    indicting him on those counts as an aider and abettor, which

 5    they didn't do --

 6            THE COURT:  But they did indict him for --

 7            MR. LaTONA:  CCE and conspiracy, like Barrett and

 8    Sweat and the Joiner, same case, same two counts.

 9            THE COURT:  He -- he obtained and supplied quantities

10    of cocaine, heroin, and fentanyl, to members of the

11    Gil-Aguirre DTO for sale to its customers.  I mean, that's a

12    pretty pointed allegation that the grand jury found.

13            MR. LaTONA:  It's very broad, but it's not

14    specifically tied into these substantive counts.  That's my --

15    that's my argument.  He can't say that he aided and abetted it

16    without the grand jury having found and indicting him for that

17    conduct.

18            THE COURT:  I'm not sure he did aid and abet.  I

19    think the allegation is that he participated directly and

20    conspired with the -- I mean, maybe I'm missing something.

21            Mr. Felicetta, am I missing something?

22            MR. FELICETTA:  No, you're not missing it, Judge.

23    It's a conspiracy case.  He's charged with anything

24    foreseeable in that conspiracy.

25            He does not need to be Section 2 on each substantive
```

USA v Jose Ruben Gil - Oral Argument - 5/8/18

1   count of those to count.  All of the conduct that follows from

2   the conspiracy, that's reasonably foreseeable, is tagged on

3   him, whether there was a CCE or not.  That's the law.

4          And we've laid out, as Your Honor has referenced, an

5   introduction explaining how his role is related to the

6   conspiracy.

7          There doesn't need to be an 18, USC, Section 2 for it

8   to count.

9          THE COURT:  Okay.  Anything further, Mr. LaTona?

10          MR. LaTONA:  No, I think Your Honor has a good handle

11   on everything.

12          THE COURT:  Mr. Felicetta, anything further?

13          MR. FELICETTA:  No, Judge, thank you.

14          THE COURT:  Okay.  Thank you all very much.

15          Mr. LaTona, if, after you speak with your client,

16   there's anything -- well, let's do this.  If, after you speak

17   with your client, you need to submit further papers of some

18   sort, I don't want to come back and argue again, but if your

19   client gives you something that you think is worth submitting

20   to me, you've got until the end of the week to submit it.

21          And, Mr. Felicetta, if you want to respond to that,

22   you've got until next Wednesday to respond.  How's that?

23          MR. FELICETTA:  Thank you.  Judge, can I just very

24   briefly reference one other thing that came up?  Thank you,

25   I'm sorry.

1          THE COURT:  No, that's okay.

2          MR. FELICETTA:  Just the bill of particulars.  I know

3     Your Honor has brought it up before, and you've suggested it

4     could serve as a cure to any alleged failures in the --

5          THE COURT:  Well, it's not so much that it can serve

6     as a cure.  But I think that the defendant -- I think that the

7     defendant has a right to know what the government is going to

8     prove by way of the acts that make up the CCE.  That -- that's

9     my concern.

10          And, in fact, and the question I asked with respect

11     to the one argument that you made that the indictment need not

12     charge, that's why I asked the question that I did.  Because I

13     can't imagine a defendant going to trial, and then the

14     government proving a -- an element of CCE, a substantive crime

15     or a series of crimes, since, according to the CCE, the

16     defendant never had notice of.

17          That's what concerns me in a situation like this.

18          MR. FELICETTA:  Yeah, I understand, and I guess I

19     just wanted to briefly touch on that if I could, if Your Honor

20     would allow me to.

21          THE COURT:  Yeah, go right ahead.

22          MR. FELICETTA:  From the day I became a prosecutor,

23     the bill of particulars has been a very frustrating thing to

24     deal with, because you always hear -- and this is nothing

25     against Mr. LaTona personally, but just from criminal defense

 1   attorneys in general, the need for it.

 2            And clearly, the case law does not support that.

 3            Even if you look at the historical evolution of

 4   Rule 7, 7(f) for the bill of particulars, that's not why it

 5   was there.  It's for prosecutors who bring forth bare-boned

 6   indictments, it's to prevent surprise, it's to avoid a

 7   defendant being prosecuted twice for the same offense in a

 8   double-jeopardy issue.

 9            But it is not a mechanism for evidentiary detail, and

10   it's not a vehicle for discovery.

11            And I would remiss if I didn't address it, Judge,

12   because I'm concerned that that may somehow end up being a --

13   some sort of compromise.

14            And my concern about bills of particular are this.

15   We've given expansive discovery in this case, over 30,000

16   pages.  We have been as open as we possibly can with respect

17   to all the evidence we have in our possession.

18            And Ms. Tokash and I have been extremely organized in

19   how we've presented it to defense counsel for those reasons.

20   We want them to have all the notice in the world, and be able

21   to prepare for their defense.

22            But when bill of particulars are ordered, it does tie

23   the government.  It hampers us.  It turns a criminal

24   proceeding into a civil one, and it makes us have to plead

25   specific things.  Which makes it very difficult at trial,

1   because if we deviate from it in some way, in any way, we end

2   up being deviant from the indictment.

3        And defense counsel knows this, and that's why they

4   ask for it in every case.  And, again, not directed at

5   Mr. LaTona specifically, just in general.  And so --

6        THE COURT:  I was one of those "in general" about

7   three years ago, Mr. Felicetta, and so I understand.  And I

8   appreciate you not directing it to Mr. LaTona personally.

9        MR. FELICETTA:  But Rule 59(a) directs that the

10  district court should not disturb a magistrate judge who's

11  decided on this issue, a non-dispositive issue unless it's

12  contrary to law or clearly erroneous, and I don't think we

13  have that here, so I don't mean to harp on the issue.  But I

14  would be remiss if I didn't bring that up.

15       THE COURT:  Yeah.  And just so you understand, my

16  suggestion of a bill of particulars was not a suggestion as to

17  a compromise, it was -- it really is what you talked about

18  just a minute ago, and that is notice to the defendant.

19       And I hear what you're saying in terms of what the

20  indictment has to allege, and then what notice is provided by

21  way of discovery.  And I know that the law is, I think,

22  generous to prosecutors with respect to not limiting them to

23  the precise allegations that are made, and the dates, and so

24  forth.

25       It's just that I also have some sympathy with defense

1    counsel wanting to know what the -- what they're facing.

2           MR. FELICETTA:  As do we.

3           THE COURT:  Yeah.

4           MR. FELICETTA:  And that's why I said we did what we

5    did.

6           THE COURT:  I understand.  I understand.  Thank you.

7           Yeah, Mr. LaTona, go ahead.

8           MR. LaTONA:  I just want to respond briefly.

9           THE COURT:  You can, yes.

10          MR. LaTONA:  He's talking about the history of

11   Rule 7.  Well, I think in the '60s, they got rid of the good

12   cause shown requirement to get a bill of particulars.  That's

13   number one.

14          I disagree with him, I think the law in the

15   2nd Circuit is contrary to their position.  When you read

16   Davidoff and Bortnovsky, where there were thousands of pages

17   of discovery, and basically it found that the district court

18   abused discretion in not making them particularize the

19   situation.

20          THE COURT:  Are those cases cited in your papers?

21          MR. LaTONA:  Yes, Judge.  Yes.  In fact, I saw -- I

22   was in court in the 2nd Circuit when Herald Fahringer argued

23   the Davidoff case, and much more eloquently than I'm doing

24   today, Judge.

25          But I think when you get into CCEs, RICOs, these

1  complex statutes that involve numerous particular elements,

2  and I went through every single case that he cited to support

3  his position, and they're distinguishable.  Some of the cases

4  he cited actually did grant a bill of particulars in drug

5  conspiracy and CCE, so I re --

6        And the bottom line of it is this.  Rule 7 says that

7  for good cause shown, they can make a motion to amend a bill

8  of particulars.  Okay?

9        If, in good faith, they're acting in good faith, and

10 they can establish that there would be harm, and that there's

11 some new information, they can always make that motion to this

12 Court, and told that they have the flexibility that they need.

13        Me, on the other hand, you have a lot of this stuff,

14 we don't have the correlation between all of this material and

15 discovery in and of itself.  That's Rule 16.

16        Rule 7 exists independent of that.

17        And our position is that if Your Honor does not

18 dismiss the CCE -- well, if you do, we want it on the

19 conspiracy count, if you don't, we want it on both of those

20 counts.

21        THE COURT:  I understand.  Okay.  Anything further?

22        MR. FELICETTA:  No, Judge, thank you.

23        MR. LaTONA:  Judge, is there any way I can talk to my

24 client here, I mean, or is that not possible?

25        THE COURT:  You know, I don't know.  I think other

```
 1   people are going to be able to hear, is the problem.

 2          MR. LaTONA:  Yeah.

 3          THE COURT:  So I think it probably makes more sense

 4   for you to try to --

 5          MR. LaTONA:  Ruben, would you send me an email?

 6          THE DEFENDANT:  Yes.  But I think if you are over

 7   there, I can probably ask the officers to give me a legal

 8   phone here, because if you try to set up a phone call --

 9          MR. LaTONA:  Okay.  You know what I'll do?  When I go

10   back, I'm going to try to set up a phone call.  Okay?

11          THE DEFENDANT:  It's gonna take about a week.

12          MR. LaTONA:  It takes a week to get a phone call?

13          THE DEFENDANT:  Yeah.

14          MR. LaTONA:  Judge, can I get two weeks?  He's

15   telling me that the logistics there, you need two weeks for a

16   phone call.

17          THE COURT:  Yeah.  Mr. Felicetta just left, so talk

18   to him, and -- Ann, this can be off the record.

19          (Off the record at 2:42 p.m.)

20          (Back on the record at 2:43 p.m.)

21          MR. FELICETTA:  I'm trying to give him some privacy,

22   that's why we left.

23          THE COURT:  I was, too.  I was doing the exact same

24   thing, Mr. Felicetta, and I understand that, and I appreciate

25   that.  And I wasn't -- we weren't chasing you down because I
```

 1     thought you left too soon.

 2          But Mr. Gil has told Mr. LaTona that he thinks it may

 3     take some time for them to be able to talk because of

 4     procedures --

 5          MR. FELICETTA:  Oh.  Okay.

 6          THE COURT:  -- out there.  So Mr. LaTona needs more

 7     time than the time I gave him.

 8          MR. FELICETTA:  That's fine.  We're not scheduled --

 9     my understanding is that we are not scheduled for trial as to

10     Mr. Gil on August 14th because of scheduling issues and

11     various other issues related to the custodial status of

12     Mr. Gil and his health issues.  So with that in mind, and

13     knowing that his trial has not yet been set, the government

14     doesn't object to giving the defense additional time to make

15     those conversations --

16          MR. LaTONA:  And the motions are pending.  What I

17     would ask is if I could get one week for my phone call with

18     him to submit something, and if there's nothing to be

19     submitted I'll let you all know; is that fair?

20          THE COURT:  That sounds terrific.

21          MR. LaTONA:  Make it a week --

22          THE COURT:  But why don't you report to us as soon as

23     that phone call is made.

24          MR. LaTONA:  I will.  I will, Judge.  I will.

25          THE COURT:  And if you don't want submit anything,

USA v Jose Ruben Gil - Oral Argument - 5/8/18

29

1    then just let us know that.

2            MR. LaTONA:  Yes, Judge.

3            THE COURT:  Should we set a date, Ms. Gioia?  Should

4    we actually set a date?

5            THE CLERK:  For --

6            THE COURT:  For Mr. LaTona to report back to us as to

7    whether --

8            MR. LaTONA:  Well, it depends on when I can set up

9    the phone call.

10           THE COURT:  I'm thinking set a date, so no later than

11   three weeks from now, or something like that.

12           MR. LaTONA:  Oh.

13           THE DEFENDANT:  About a week.  It takes about a week

14   only.  It takes one week.

15           THE CLERK:  How about May 18th?

16           THE DEFENDANT:  If you call right now, if you call,

17   Mr. LaTona, right now, you know, they probably do it, but --

18           MR. LaTONA:  No, I know, we're gonna --

19           THE COURT:  Let's do this.  Let's set May 18th.

20           MR. LaTONA:  Okay.

21           THE COURT:  May 18th as the deadline for Mr. LaTona

22   to get back to us as to whether he wants to file anything

23   further.

24           MR. LaTONA:  Unless there's some compelling

25   circumstance where I need more time.

1          THE COURT:  And then if you need more time, just call

2  Mr. Felicetta, he will give you more time, and I will give you

3  more time.

4          MR. LaTONA:  That's fair enough, Judge.  Thank you.

5  I will set it up with Mr. Gil.

6          THE COURT:  I don't mean to speak for you, but I know

7  that you're --

8          MR. FELICETTA:  That's okay, Judge.  I just said

9  that, so, great.

10          MR. LaTONA:  Okay.  Thank you, Judge.  Thank you,

11  Mr. Gil.  I'll set up the phone call.  Appreciate it.

12          THE DEFENDANT:  Okay, thanks.

13          (Proceedings concluded at 2:45 p.m.)

14          *    *    *    *    *    *    *

15

16                    **CERTIFICATE OF REPORTER**

17

18          In accordance with 28, U.S.C., 753(b), I

19  certify that these original notes are a true and correct

20  record of proceedings in the United States District Court for

21  the Western District of New York on May 8, 2018.

22                          s/ Ann M. Sawyer

23                          Ann M. Sawyer, FCRR, RPR, CRR,
                            NYRCR, NYACR, Notary Public
24                          Official Court Reporter
                            U.S.D.C., W.D.N.Y.

25